1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  MICHAEL MAFFEI (CABN 240978)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7246
7      FAX: (415) 436-7027
       Michael.Maffei@usdoj.gov
8
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CR 14-00651 TEH |
|---|---|
| Plaintiff, | ) GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | ) |
| | ) Date: March 14, 2016 |
| LUIS GONZALO CAUICH CARBAJAL, | ) Time: 2:30 p.m. |
| Defendant. | ) Hon. Thelton E. Henderson |

**INTRODUCTION**

The United States respectfully requests that this Court accept the plea agreement submitted by the parties under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. On, March 14, 2016, the defendant, Luis Gonzalo Cauich Carbajal, will stand before the Court to be sentenced following his plea to Count Three of the Indictment, charging receipt of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2). The defendant pled guilty on December 7, 2015, and he has been in continuous custody since November 12, 2014.

The parties have agreed that the proper disposition in this case is a term of imprisonment between 120 and 210 months, a supervised release term of 10 years to follow (with conditions to be determined by the Court and including the conditions agreed to by the parties), a fine to be determined

by the Court, and a mandatory special assessment of $100. It is the government's view that a sentence of 210 months is sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a). 210 months is a sentence at the low-end of the Guidelines range for the Adjusted Offense Level and Criminal History Category for this defendant.

The government moves at this time to reduce the defendant's Adjusted Offense Level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). Based on this motion, the government agrees with the Probation Officer that the defendant's Total Offense Level is 37 and that his Criminal History Category is I. The government also will move to dismiss Counts One and Two of the Indictment at the time of sentencing.

## THE DEFENDANT'S OFFENSE CONDUCT

On October 7, 2014, an individual found a blue cell phone on the ground near a taco truck in Richmond, California. Presentence Report ("PSR") at ¶ 6. After opening the phone in an attempt to determine the phone's owner, the individual saw photos of child pornography, and turned the phone over to the police. *Id.* at ¶¶ 6-8. The police conducted an investigation to determine the owner's identity, and that investigation ultimately led them to this defendant. *Id.* at ¶¶ 7-13. As part of that initial investigation, law enforcement agents examined the phone's contents, and found over 2,000 chat messages in Spanish, in which images of a young naked girl, and an older naked woman, were exchanged between this defendant and another phone number between September and October of 2014. *Id.* at ¶¶ 8-12. The other phone number originated in Mexico, and the FBI opened a case with the assistance of the FBI attaché in Mexico City, Mexico, in order to learn the owner's identity of the other phone number.[1] *Id.* at ¶ 12.

On November 10, 2014, Richmond Police Department officers arrested the defendant. *Id.* ¶ 13. Officers seized a second cell phone from the defendant's person at the time of his arrest. *Id.* at ¶ 13. Officers searched that second phone and found a third-party text message application, "WhatsApp." *Id*. Officers examined the text messages sent via the "WhatsApp" program, and they learned that the

---

[1] The Mexican authorities proved unwilling or unable to assist the FBI in locating the young girl depicted in the nude photos found on the defendant's phones, and thus, the United States cannot determine the victim's physical location. The government was not able to meet with the young girl or the girl's mother.

defendant's phone contained text messages, photos, and videos, all to the same number as found on the first phone – the number that originated in Mexico. *Id*. The nature of the text messages found on the second phone indicated that the defendant communicated via "WhatsApp" with a female. *Id*. Within the "WhatsApp" text messages, officers found numerous images and videos of child pornography, in addition to clothed and nude images of an older female. *Id*. at ¶¶ 12-13

The child pornography videos found on the second phone depicted the same young girl as depicted in the child pornography found on the first, "lost" phone. *Id.* at ¶ 14. The videos depicted the young girl masturbating, and there were also numerous photos of the victim masturbating and displaying her vagina for the camera. *Id*. The FBI identified the following videos on the second phone:

1. Video #1 was sent from the phone with the Mexican phone number to the defendant on October 20, 2014, and depicts the young victim wearing a t-shirt while she is masturbating for the camera and talking. *Id.*

2. Video #2 was sent from the phone with the Mexican phone number to the defendant on October 22, 2014, and depicts the victim wearing only a black t-shirt and talking and masturbating for the camera. *Id*.

3. Videos #3 and #4 were sent from the phone with the Mexican phone number to the defendant on October 26, 2014, and they depict the victim completely naked and masturbating for the camera. *Id*.

4. Videos #5 and #11 were sent from the phone with the Mexican phone number to the defendant on October 26, 2014 and they depict the victim completely naked and masturbating for the camera. Video #5 also depicts the victim urinating while being filmed. *Id*.

5. Videos #6 and #7 were sent from the phone with the Mexican phone number to the defendant on October 27, 2014, and video #8 was sent on October 29, 2014, All three videos depict the victim completely naked and masturbating for the camera. *Id*.

6. Video #9 was sent from the phone with the Mexican phone number to the defendant on November 5, 2014, and depicts the victim completely naked and posing in sexually suggestive positions for the camera while the camera focuses on her vagina. *Id*.

7. Video #10 was sent from the phone with the Mexican phone number to the defendant on

1  November 9, 2014, and Videos #12 and #13 were sent on November 10, 2014 (the same day the
2  defendant was arrested). They all depict the victim completely naked and masturbating for the camera.
3  *Id*.

4  On November 10, 2014, after being arrested, the defendant consented to a recorded interview by
5  the Richmond Police. *Id*. at ¶ 15. During that interview, the defendant admitted owning the first, "lost"
6  phone found by the passerby, and admitted to owning the phone police seized from him that day. *Id*. at
7  ¶ 16. The defendant readily identified the individuals depicted in all the photos found on his phones,
8  and he identified the older woman as his "wife," and the children depicted in photos as "her two
9  children, a boy and a girl." *Id*. Police later found out that the woman the defendant identified as his
10 wife is actually his girlfriend, because the defendant was already married to someone else. *Id*. The
11 young girl that the defendant identified as the older woman's daughter is the young girl depicted in all
12 the child pornography. *Id*.

13 When first asked how the defendant came to receive all the child pornography of the young girl
14 on his two phones, the defendant lied. *Id.* at ¶ 17. He first told police that the young girl was "sick,"
15 and that something was "wrong with her vagina," and he wanted an "update" on the victim to "confirm
16 she was doing well." *Id*. at ¶ 17-18. When the police officers confronted the defendant with the fact
17 that none of the text messages discussed the young victim's illness, the defendant changed his story. *Id.*
18 at ¶ 20. The defendant then said that while he initially asked for the photos because he was concerned
19 about the young girl's "illness," he now said that "over time, he enjoyed the photos of the young girl."
20 *Id*. He continued to state that when he viewed the photos he became excited, but in the back of his mind
21 he realized that the young girl was his "daughter." *Id*. When asked if the images of the young girl made
22 him "horny," the defendant replied, "yeah, I honest, yeah." *Id*. The officers asked the defendant about
23 the woman's comment to him about being the young girl's "first," and the defendant replied that the
24 statement referred to him being the first person to have sex with the victim. *Id*. at ¶ 21.

25 On November 13, 2014, the defendant was interviewed by the FBI. *Id*. at ¶ 22. The defendant
26 again identified the young victim depicted in the child pornography videos and images. *Id*. When
27 confronted with the fact that the text message communication between the defendant and the woman in
28 Mexico (the woman the defendant originally described as his "wife") made no mention of the victim's

1  "illness," the defendant admitted to asking the woman for the videos and images of child pornography.
*Id*. In the interview, the defendant admitted to receiving 200 images and 20 videos depicting the young girl masturbating. *Id*. at ¶ 23. The defendant stated that the victim was not actually his daughter, but was one of the woman's four children. *Id*. The defendant stated that the victim was 10 years old, and described the small town in Mexico where the woman and her children lived. *Id*.

The videos found on the second phone also depict the young girl naked and masturbating. *Id*. at ¶ 26. In the videos, it appears that the older woman is directing the young girl. *Id*. The young girl can be heard saying in Spanish, "Daddy this is for you. I love you very much. I want you to play with my vagina (slang)." *Id*. Many of the other videos found on the second phone include videos such as the one described above.

## DISCUSSION

### I. The Defendant's Sentencing Guidelines Calculation.

As set forth in the PSR, the Sentencing Guidelines calculation for the defendant's offense level is as follows:

Count Three: Receipt of Child Pornography

| | | | |
|---|---|---|---|
| a. | Base Offense Level: (U.S.S.G. §§ 1B1.2(a), 1B1.3(a), and 2G2.1(a)) | | 32 |
| b. | Specific Offense Characteristics (U.S.S.G. § 2G2.1(b)(1)(A)) (Offense involved a minor not yet 12 years old) | | +4 |
| c. | Specific Offense Characteristics (U.S.S.G. § 2G2.1(b)(2)(A)) (Offense involved commission of a sexual act or sexual contact) | | +2 |
| d. | Specific Offense Characteristics (U.S.S.G. § 2G2.1(b)(6)(B)(i)) (Offense involved the use of a computer) | | +2 |
| e. | Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | | -3 |
| f. | Adjusted Offense Level: | | <u>37</u> |

At Adjusted Offense Level 37 and Criminal History Category I, the Guidelines range for this defendant is 210 – 262 months. PSR ¶ 84. However, pursuant to the terms of the plea agreement, the

defendant is authorized to seek a variance down to 120 months. The government is bound by the low-end of the guidelines range. Thus, the Guidelines range in this case is 120 – 210 months.

## II.     Plea Agreement

The plea agreement contemplates a sentence of 120-210 months imprisonment, 10 years of supervised release (with conditions to be fixed by the Court), a fine to be determined by the Court, a $100 special assessment. Dkt. No. 33. In addition to the supervised release conditions fixed by the Court, the parties agree that the defendant should be subject to the following search conditions:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

<u>Special Condition (Limitations on use of Internet-Connected Devices)</u>

The defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, telephone, or other internet-connected device that the defendant possesses or has access to, including any internal or external peripherals or electronic storage device. The defendant shall allow the temporary removal of any such devices for a more thorough inspection, and the defendant shall not use or possess any data encryption techniques or programs. The defendant shall not access or use any file-sharing P2P network or software without the consent of the Probation Officer. The defendant shall not use "WhatsApp" or any other third-party text messaging applications.

The Probation Officer concurs in the parties' sentencing Guidelines calculation, and recommends a mid-range sentence of 168 months, and concurs with the parties' recommendation of a 10 year term of supervised release and the $100 special assessment.

## III.    Section 3553(a) Factors

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). In sentencing the defendant, this Court must consider all of the directives set forth in Title 18, United States Code, Section 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). To start, the Court must consider the correctly calculated Guidelines

GOVERNMENT'S SENTENCING MEMORANDUM
CR 14-CR-00651 TEH                                       6

range. *Id*. However, the Court may not presume that a sentence within the Guidelines range is reasonable because the Guidelines are one among the several Section 3553(a) factors that courts are directed to consider in arriving at an appropriate sentence. *Id*. These goals include the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from further crimes from the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a).

The government believes that a sentence of 210 months—which is the high end of the range agreed to by the parties but the low end of the Guidelines—is the proper disposition in this case and is sufficient, but not greater than necessary, to achieve the goals of section 3553(a).

With respect to the nature and circumstances of the instant offense, the images and videos the defendant received are vile beyond what one would hope are the limits of most human imagination. The videos and images captured a real child, only 10 years old, who we can only hope has been removed from the horrible home life she experienced. And the defendant was fully aware of the age of the girl, and of the fact that the girl's *mother* filmed these images and videos and sent them to the defendant at the defendant's request.

Any defense argument that these videos and images were not created by the defendant and that therefore the defendant is not as culpable as the mother fails to appreciate the gravity of the direct and indirect impact of the defendant's criminal conduct. With the aid of the girl's mother, the defendant exploited a vulnerable child by requesting and receiving photographs and videos of the girl engaged in masturbation and lasciviously displaying her genitals. Because this victim lives in Mexico, law enforcement has not yet been able to locate her to obtain a victim statement. In fact, it appears that the Mexican federal law enforcement agency will not work with the FBI to locate and remove the girl from her deplorable living conditions. However, it is very likely that this girl has suffered psychological and potentially physical harm as a result of the defendant's actions of continually requesting these videos and images. Moreover, the videos in which the victim talks to the camera and addresses the defendant while masturbating are disgusting and repulsive. This conduct calls for the longest sentence this court may impose. A sentence of 210 months is an appropriate punishment given the heinous nature of the

defendant's crimes, and it is not greater than necessary to punish him for his involvement in the repeated abuse of that poor young girl.

With respect to the history and characteristics of this defendant, the historical record makes clear that this defendant has the characteristics of a budding sexual predator, a callous and remorseless exploiter of children, and a liar. As described above, the defendant has demonstrated an insatiable demand for child pornography. The defendant received over 200 images and 20 videos of child pornography, all of the same 10 year old girl, and all in a very short period of time of only several months. Although the defendant has received a reduction for acceptance of responsibility, the defendant chose not to issue an apology. And finally, the defendant's story about why he received the large number of child pornography changed. First, he said that it was because the girl was "sick." Then, only when confronted with the overwhelming evidence showing his guilt, did the defendant finally admit that he asked for the pictures and videos. Additionally, it is worth noting that there is nothing in the defendant's background that would hint at the horrific crimes the defendant would commit. PSR, ¶¶ 54-66. This "normal" upbringing" makes the defendant's crimes that much more shocking.

With respect to the achieving the goals of sentencing, the kinds of sentences available, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant, the defendant has pled guilty to Count Three of the indictment, and did so in a timely fashion. For that reason, the government moves for the third point for acceptance of responsibility and has agreed to dismiss the currently pending charges of production of child pornography and possession of child pornography, violations of Title 18, United States Code, Sections 2251(c)(2)(B) and 2252(a)(4)(B). However, the defendant—and future defendants—must be deterred from using the Internet to exploit young, vulnerable victims, including those in foreign countries who may be difficult to locate and without the opportunity to give voice to the harm that they have suffered. A sentence of 210 months would deter the defendant, and those who would engage in similar conduct, from trying to exploit children, regardless of where they are located throughout the world. The government's recommended sentence is at the low end of the Guidelines and it accounts for the defendant's lack of any other criminal history.

//

GOVERNMENT'S SENTENCING MEMORANDUM
CR 14-CR-00651 TEH                   8

## IV. CONCLUSION

In full consideration of the 3553(a) factors and the goals of sentencing, the government respectfully requests that the Court accept the plea agreement of the parties and sentence the defendant to a 210 month term of imprisonment, a supervised release term of 10 years to follow (with conditions to be determined by the Court and including the search condition agreed to by the parties), a fine to be determined by the Court, and a mandatory special assessment of $100. As noted in the PSR, "[t]he probation officer has not identified any factors that would warrant a departure from the applicable sentencing guidelines range." PSR, ¶ 99. A sentence at the low-end of the applicable guidelines range is deserved.

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

Date: February 29, 2016

/s/
MICHAEL MAFFEI
Assistant United States Attorney